UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JANE DOE,

                               Plaintiff,

             -*against*-

SKYLINE AUTOMOTIVE INC., individually
and D/B/A/ TOYOTA OF MANHATTAN,
SKYLINE AUTOMOBILES INC., individually
and D/B/A/ TOYOTA OF MANHATTAN,
TOYOTA MOTOR NORTH AMERICA, INC.,
FREDDY VELEZ, individually,
KEVIN PRIMUS, individually,
ANTHONY NAMIAS, individually,

                        Defendants.
-----------------------------------------------------x

**Civil Case No.: 18-CV-4418**
**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

**COMPLAINT**

       Plaintiff, JANE DOE, by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, SKYLINE AUTOMOTIVE INC, individually and D/B/A/ TOYOTA OF MANHATTAN, SKYLINE AUTOMOBILES INC, individually and D/B/A/ TOYOTA OF MANHATTAN, TOYOTA MOTOR NORTH AMERICA, INC. (hereinafter referred to collectively as "TOYOTA DEFENDANTS"), FREDDY VELEZ (hereinafter referred to as "VELEZ") individually, KEVIN PRIMUS (hereinafter referred to as "PRIMUS") individually, ANTHONY NAMIAS (hereinafter referred to as "NAMIAS") individually, and collectively referred to as "Defendants" upon information and belief, as follows:

<u>**NATURE OF CASE**</u>

       Plaintiff, JANE DOE, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, race discrimination, national origin discrimination, sex discrimination, gender discrimination, sexual harassment, hostile work environment, retaliation and wrongful termination, by Defendants.

### JURISDICTION AND VENUE

1.   Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and 42 U.S.C. §1981.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2.   Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3.   Around July 11, 2017, Plaintiff JANE DOE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2017-02917.

4.   Around March 12, 2018, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for her federal charge number 520-2017-02917.

5.   As such, Plaintiff satisfied all administrative prerequisites and is timely filing this case within ninety (90) days of receiving her Right to Sue letter.

6.   Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7.    Plaintiff JANE DOE is an individual woman of Indian descent, residing in the State of New Jersey, County of Bergen.

8.    At all times material, Defendant SKYLINE AUTOMOTIVE INC, INDIVIDUALLY AND D/B/A/ TOYOTA OF MANHATTAN was and still is a foreign business corporation doing business in the State of New York, with their principal place of business located at 645 11th Ave., New York, New York 10036.

9.    At all times material, Defendant SKYLINE AUTOMOBILES INC, INDIVIDUALLY AND D/B/A/ TOYOTA OF MANHATTAN was and still is a foreign business corporation authorized to do business in the State of New York, with their principal place of business located at 645 11th Ave., New York, New York 10036.

10.    At all times material, Defendant TOYOTA MOTOR NORTH AMERICA, INC. was and still is a foreign business corporation authorized to do business in the State of New York, with their principal place of business located at 515 Park Avenue, New York, New York 10022.

11.    At all times material, Plaintiff JANE DOE was employed jointly and severally by Defendants SKYLINE AUTOMOTIVE INC, INDIVIDUALLY AND D/B/A/ TOYOTA OF MANHATTAN, SKYLINE AUTOMOBILES INC, INDIVIDUALLY AND D/B/A/ TOYOTA OF MANHATTAN AND TOYOTA MOTOR NORTH AMERICA, INC. (collectively "TOYOTA DEFENDANTS").

12.    At all times material, Defendant FREDDY VELEZ was and is the finance manager for the TOYOTA DEFENDANTS and held supervisory authority over Plaintiff with regard to her employment.

13.    At all time material, Defendant KEVIN PRIMUS was and is the General Sales Manager for

3

TOYOTA DEFENDANTS and held supervisory authority over Plaintiff with regard to her employment.

14.     At all time material, Defendant ANTHONY NAMIAS was and is an employee of TOYOTA DEFENDANTS.

## **MATERIAL FACTS**

15.     Around June 23, 2016, Plaintiff, JANE DOE began her employment with Toyota of Manhattan as a finance manager.

16.     Almost immediately, and throughout the entirety of her employment with Defendants, Plaintiff was subjected to discrimination because of her sex and gender, and because of her race and national origin.

17.     Around July 13, 2016, the dealership was invited by Toyota Financial Services ("TFS") to a dealer appreciation golf outing and dinner at the golf club at Mansion Ridge, in Monroe, NY.  Normally the General Manager ("GM") goes to such an event and takes one finance manager with him. Defendant's GM decided he didn't want to go because he wasn't well liked at that time by TFS because he was blamed for over a million dollars in held contracts.

18.     Because Plaintiff had a great relationship with the bank, Defendant's General Manager asked Plaintiff to attend the golf outing and dinner on his behalf, along with Defendant PRIMUS, who was recently promoted from sales manager to general sales manager. Defendant's general manager wanted Defendant PRIMUS to get his face out and become familiar with the people the dealership dealt with at the bank.

19.     Plaintiff and Defendant PRIMUS did not attend the golf portion of the outing, but went

4

in the evening for dinner.   Because Plaintiff's house was on the way to the event, Defendant PRIMUS picked Plaintiff up from her home in New Jersey around 4:30 p.m. and drove himself and Plaintiff to the event in his car.  When Defendant PRIMUS and Plaintiff arrived at the event, they socialized, had dinner and Plaintiff had one glass of red wine.  After the event Plaintiff and Defendant PRIMUS drove back to Fort Lee, arriving around 8:45 p.m.

20.     As Plaintiff was getting out of the car and saying goodbye to Defendant PRIMUS, he said to Plaintiff that it was still so early, and that they should "hang out."  Defendant PRIMUS wanted to drink more, so Plaintiff took Defendant PRIMUS to a bar only few minutes away from her house in Englewood Cliffs, NJ. At the bar, Plaintiff, ordered one drink, which she did not finish by the time she and Defendant PRIMUS left.

21.     Plaintiff and Defendant PRIMUS left the bar around 11:00 p.m. and were back and Plaintiff's home in few minutes.   As Plaintiff was exiting the car and saying good night, Defendant PRIMUS asked Plaintiff if he can come up to her apartment and "hang out," because it was still early for him, and he wasn't ready yet ready to go home.   Even though Plaintiff was hesitant, she did not want to upset Defendant PRIMUS because she feared she might be fired if she said no, so she agreed to let him come up to her apartment to "hang out."

22.     When Plaintiff and Defendant PRIMUS entered the apartment, Defendant PRIMUS asked Plaintiff to make him a drink, and Plaintiff made Defendant PRIMUS a screw-driver (alcoholic beverage) and also made one for herself.  A short while later Defendant PRIMUS asked Plaintiff for another drink, so Plaintiff left her drink where Defendant PRIMUS was sitting in the living room and went to the kitchen to make him another

drink.  Plaintiff came back to the living room with Defendant PRIMUS's drink and she continued to drink the drink she had left sitting unattended in the living room.

23.     Around 1:00 a.m., Plaintiff suddenly became extremely tired and felt as if she had been drugged, so she went to her room to change her clothes into pajamas while Defendant PRIMUS was sitting in the living room.   Plaintiff was trying to give Defendant PRIMUS the hint that she was ready to go to sleep without, being rude and risking offending Defendant PRIMUS, which might affect her job, as he was her supervisor. Plaintiff came back to the living room and was trying to stay awake but suddenly felt extremely sleepy, like she had been drugged.   Plaintiff got up and said to Defendant PRIMUS that she was going to sleep and asked Defendant PRIMUS to leave and to shut the door behind him.

24.     As Plaintiff made her way to her bedroom, Defendant PRIMUS followed Plaintiff. Plaintiff thought Defendant PRIMUS was saying good night, but when Plaintiff got to the bedroom, Defendant PRIMUS suddenly picked Plaintiff up and threw her on the bed and forcibly began  performing oral sex on Plaintiff against her will.    Plaintiff yelled at Defendant PRIMUS to stop, but Defendant PRIMUS did not listen to Plaintiff and continued to sexually assault Plaintiff.  Plaintiff tried with her weak, drugged body, to stop Defendant PRIMUS and move away from him, but Plaintiff felt groggy from being drugged and had no energy to fight Defendant PRIMUS off.

25.     After a  few minutes Defendant PRIMUS jumped on top of Plaintiff, forced his penis inside of her, also started sucking on Plaintiff's breast. Defendant PRIMUS raped Plaintiff by penetrating her vagina with his penis against her will.  Defendant PRIMUS held down Plaintiff's arms so that she could not move.   Even though Plaintiff begged Defendant

PRIMUS to stop many times, Defendant PRIMUS continued to rape Plaintiff, and shortly thereafter, Plaintiff completely blacked out.

26.     Plaintiff did not regain consciousness until the next morning, when she received a phone call from Defendant PRIMUS asking how she was doing. Plaintiff complained to Defendant PRIMUS that she begged him to stop raping her while she was awake and that he did not listen to her, and that a few minutes later she was completely knocked out and does not know what happened after that. Plaintiff told Defendant PRIMUS that she was not interested in him romantically, and Defendant PRIMUS simply said, "oh ok, let's not talk about it anymore since you don't remember much anyway. Forget it happened and we won't do it again."

27.     After Plaintiff finished her conversation with Defendant PRIMUS, she got up to get ready for work and she began violently vomiting and felt the biggest headache she ever felt. The entire day at work, Plaintiff was miserable and threw up all day. Plaintiff realized that she must have been drugged by Defendant PRIMUS, before he raped her.

28.     Over the next few days, around July 14, 2016, Defendant PRIMUS pretended as if nothing happened. However, after few days, around mid-July of 2016, Defendant PRIMUS told Plaintiff, "you have a nice vagina, I enjoyed licking you" and "you tasted good, we need to do it again while you are awake so you can remember, I am sure you will enjoy it, I am good." Defendant PRIMUS continued making these disgusting sexually harassing comments toward Plaintiff throughout the remainder of time that Plaintiff worked for Defendants.

29.     On one occasion, Defendant PRIMUS said to Plaintiff, "you are so fucking sexy, I wanna have sex with you so bad, I want you so bad."

30.  Whenever Defendant PRIMUS called Plaintiff on the phone he would ask her, "what are you wearing?" Defendant PRIMUS told Plaintiff that she was the first Indian woman he was so attracted to, because not only did she have "big boobs" but she also has "a nice ass."

31.  On multiple occasions, Defendant PRIMUS told Plaintiff that he "loves eating pussy" and often said, " I want to lick you."

32.  In addition to the inappropriate and discriminatorney comments Defendant PRIMUS made to Plaintiff at work,  Defendant PRIMUS also sent Plaintiff inappropriate text messages to the same effect.

33.  Around September 22, 2016, Plaintiff received a text message from Defendant PRIMUS saying, "you are so fucking sexy."

34.  Around September 24, 2016, Plaintiff received a text message from Defendant PRIMUS saying, "want you."

35.  Around September 25, 2016, Plaintiff received a text message from Defendant PRIMUS saying, "what you wearing?"

36.  Around October 23, 2016, Plaintiff received another text message from Defendant PRIMUS saying "what you wearing?"

37.  In addition to Defendant PRIMUS's sexual harassment of Plaintiff, Defendant ANTHONY NAMIAS, also made sexual comments to Plaintiff on a constant basis.

38.  Around June 25, 2016, and on multiple occasions thereafter, Defendant NAMIAS told Plaintiff's friend and co-worker, Yris Salcedo, that he "thinks **Plaintiff is** hot and he wants to sleep with Plaintiff."

39.  Around July 2, 2016, Defendant NAMIAS went to Plaintiff's office with a deal, and told

Plaintiff that he "has a spot for [Plaintiff]." As they were discussing the deal Defendant NAMIAS told Plaintiff that she should take him up for his offer and have sex with him, and, "I promise you will enjoy, I am really good." Plaintiff complaied to Defendant NAMIAS that she does not have any interest in having sex with him, and Plaintiff asked Defendant NAMIAS to stop making such comments to her.

40.   Despite Plaintiff's complaints and requests that Defendant NAMIAS cease his sexually harassing behavior, Defendant NAMIAS continued to harass Plaintiff whenever he was alone with Plaintiff.

41.   Around September 3, 2016, Plaintiff and Defendant NAMIAS were working on a deal together, and NAMIAS told Plaintiff, "you look so sexy today, I would really like to have my way with you." Again, Plaintiff told Defendant NAMIAS to stop talking to her in that way.

42.   Around September 28, 2016, Defendant NAMIAS and Plaintiff were in an elevator together alone, and Defendant NAMIAS said to Plaintiff, "why don't you give me a chance, I really want to have sex with you at least once." Again, Plaintiff told Defendant NAMIAS to stop sexually harassing her, but to no avail.

43.   Around November 11, 2016, Defendant NAMIAS went to Plaintiff in her office and said, "why do you have to be so stuck up. I am telling you, I got skills, you should have sex with me, I promise you will like it and you will come back for more." Again, Plaintiff told Defendant NAMIAS to stop making such sexual comments and requests. This conduct continued throughout the rest of Plaintiff's employment with Defendants.

44.   In addition to the sexual harassment Plaintiff was forced to endure on a daily basis, she was also forced to endure race and national origin discrimination.

45.   On a number of occasions, Defendant FREDDY VELEZ made fun of Plaintiff's Indian accent and mimicked her from his office or outside of his office. Defendant VELEZ also often said that because Plaintiff was Indian she should be in charge of taking care of all the "cheap stinky Indians."

46.   Around December 16, 2016, when Plaintiff arrived at work, she noticed that she was missing a deal that she was working on, and that Defendant VELEZ had taken it from her office. Plaintiff went to Defendant VELEZ's office to ask about the deal and Defendant VELEZ got angry at Plaintiff and said, "get out of my office you fucking Indian, you cannot even speak English, and you think you gonna do better than me, go back to your county." Plaintiff was stunned by Defendant VELEZ's comments, particularly in light of the fact that she is an American Citizen and has been in the United States for 26 years.

47.   Around December 30, 2016, Defendant KEVIN PRIMUS went to Plaintiff's office in the early evening and told her that she had to go to the General Manager, Mike Grau's office. Plaintiff asked Defendant KEVIN PRIMUS what it was about and he said, "it does not look good" and that he thinks, "they are gonna let you go." Plaintiff was completely shocked and blindsided by her wrongful termination.

48.   Around December 30, 2016, Defendants wrongfully terminated Plaintiff because of her sex, gender, race, national origin, and for having rebuffed the constant quid pro quo sexual harassment and hostile work environment she was forced to endure, as well as in retaliation for having complained of discrimination and for having protested the discrimination.

49.   As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

50.   As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and

continues to suffer severe emotional distress and physical ailments.

51.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails.  Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

53.   The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

54.   Defendants' actions constituted a continuing violation of the applicable federal, state and city laws.

55.   Plaintiff hereby demands reinstatement to her original position.


### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

56.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

57.   Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

11

58.    TOYOTA DEFENDANTS engaged in unlawful employment practices prohibited by 42

U.S.C. §2000e et seq., by allowing race discrimination, national origin discriminant, sex

discrimination and a hostile work environment.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

59.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this complaint as if fully set forth at length.

60.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)  provides  that

it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any

practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."

61.    TOYOTA DEFENDANTS engaged in unlawful employment practice prohibited by 42

U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or

privileges of employment because of Plaintiff's opposition to the unlawful employment

practices of Defendants.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION IN VIOLATION**
**OF 42 U.S.C. § 1981**
**(Against All Defendants)**

62.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this complaint as if fully set forth at length.

63.    42 U.S.C. Section 1981 states as follows, "All persons within the jurisdiction of the United

12

States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

64.   Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

65.   Defendants discrimination against Plaintiff in violation of the rights of Plaintiff as afforded to him by the Civil Right Act of 1866, 42 U.S.C. 1981.

66.   By the conduct described above, Defendants intentionally deprived Plaintiff, a female of Indian descent, of the same rights as are enjoyed by non-Indian employees, to the creation, performance, enjoyment and all benefits and privileges of their employment relationship with Defendants.

67.   As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling them to compensatory damages.

68.   Defendants acted with malice or reckless indifference to the rights of the above-named man of the Jewish race, thereby entitling him to an award of punitive damages.

69.   To remedy the violations of the rights of each individual Plaintiff secured by Section 1981,

Plaintiff requests that the Court award the relief prayed for below.

**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

65.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

66.   Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

67.   Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her race, national origin, sex and gender.

68.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

69.   Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as if fully set forth at length.

70.   New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

71. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.


**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

72. Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as if fully set forth at length.

73.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

74. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.


**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

75. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

76. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the

15

actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of    any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

77.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her race, national origin, sex and gender.

78.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

79.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

80.     The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

81.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Plaintiffs' employer.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

82.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

83.   The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

84.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

85.   Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as if fully set forth at length.

86.   Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

87.   Defendants violated the above section as set forth herein.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

88.     Plaintiff repeats and re-alleges each and every allegation made in the above  paragraphs of this complaint as is fully set forth at length.

89.     Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

90.     Defendants violated the above section as set forth herein.

### AS A TWELFTH CAUSE OF ACTION FOR
### ASSAULT AND BATTERY
### AGAINST DEFENDANT PRIMUS, INDIVIDUALLY.

91.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

92.    That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the
intent, carelessness and recklessness of Defendants, their agents, servants and/or employees,
suddenly and without provocation did physically assault and batter Plaintiff herein.

### AS A THIRTEENTH CAUSE OF ACTION BY VICTIM OF CONDUCT
### CONSTITUTING CERTAIN SEXUAL OFFENSES
### AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE
### AGAINST DEFENDANT PRIMUS, INDIVIDUALLY

93.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

94.    § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A
person is guilty of rape in the first degree when he or she engages in sexual intercourse with
another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of
being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than
thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

95.    § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the
first degree 1 A person is guilty of criminal sexual act in the first degree when he or she
engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible
compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3.
Who is less than eleven yeas old; or 4. Who is less than thirteen years old and the actor is
eighteen years old or more. NY CLS Penal § 130.50.

96.   Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical injury to such person:

   (1) By forcible compulsion; or

   (2) Who is incapable of consent by reason of being physically helpless;

97.   Aggravated sexual abuse in the first degree is a class B felony."

98.   Defendant PRIMUS violated the herein sections as set forth herein.

99.   Defendant PRIMUS sexually assaulted Plaintiff in a way that was in violation of the above.

100.   § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition

20

of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

101. Defendant PRIMUS is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

102. Defendants violated the above law as set forth herein.

**AS A FOURTEENTH CAUSE OF ACTION**
**GENDER MOTIOVATED VIOLENCE PROTECTION ACT**
**AGAINST DEFENDANT PRIMUS, INDIVIDUALLY,**

103. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

105. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive

damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

106.    N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

107.    Defendant's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

108.    As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.


       **WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
        May 17, 2018

                              DEREK SMITH LAW GROUP, PLLC
                              *Attorneys for Plaintiff*

                    By:    _____
                              Abraham Z. Melamed, Esq.
                              1 Penn Plaza, Suite 4905
                              New York, New York 10119
                              (212) 587-0760